IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

JUAN JOSE PERAZA MORA
GLORIA ESTHER BATISTA MOLINA

DEBTORS

CASE NO. 14-01392(ESL)

CHAPTER 12

*OBJECTION TO CONFIRMATION OF PLAN*

**TO THE HONORABLE COURT**:

Comes now, Oriental Bank ("Oriental"), represented by the undersigned attorney who respectfully prays and states as follows:

## PROCEDURAL BACKGROUND

1. On February 26, 2014, Debtors filed the instant petition for relief under Chapter 12 of the Bankruptcy Code. *See, Docket 1*.

2. Oriental filed two secured claims in the aggregate amount of $2,622,183.71. Claim no. 3 was filed for the secured amount of $400,124.85 and Claim no. 4 was filed for the secured amount of $2,222,057.86. *See, Claims no. 3 and 4*.

3. On March 25, 2014, Debtors filed their Chapter 12 Plan dated March 25, 2014. *See, Docket 15*.

4. Oriental does not accept the treatment of its claims in Debtors' proposed Chapter 12 Plan dated March 25, 2014, based on the following grounds:

   a. The plan, as drafted, fails to specify the secured amount of Oriental's claim that Debtor proposes to pay;

   b. Debtors have failed to demonstrate that the funds on the escrow account are property of the estate and that they belong to the Debtors. Moreover,

    Debtors' request for turnover of funds, if applicable, shall be done thru an Adversary Proceeding;

c. The proposed interest rate regarding Oriental's claim does not provide for a sufficient risk factor;

d. The repayment term is excessive;

e. Debtors' provision for Oriental to refinance, within 10 years, the outstanding balance of the secured portion of Oriental's claim violates the requirement of Section 1225(a)(5)(B). Thus, the plan fails to provide for the payment in full of Oriental's secured claim; and

f. The plan lacks feasibility.

5. In support of Oriental's contention, and pursuant to LBR 9013-2 which requires a supporting Memorandum of Law with all written motions, Oriental submits the following Memorandum of Law.

## MEMORANDUM OF LAW AND ALLEGATIONS

***(a) The Plan as Drafted fails to specify the Secured Amount of Oriental's Claim that Debtors proposes to pay.***

6. Section 1225(a)(5) provides in relevant part,
   > ... the court shall confirm a plan if ... with respect to each allowed secured claim provided for by the plan—
   >
   > (A) the holder of such claim has accepted the plan;
   >
   > (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
   >
   > (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor

> under the plan on account of such claim is not less than the allowed amount of such claim; or
>
> (C) the debtor surrenders the property securing such claim to such holder....

7. In this case, Oriental filed two claims for the total amount of $2,622,183.71. Oriental submits that the plan, as drafted, fails to provide specific information as to the treatment of Oriental's secured claim because from the wording of the plan it cannot be ascertain the exact amount of the secured portion that Debtors proposes to pay to Oriental Bank. Thus, Oriental as a secured creditor does not accepts the proposed plan.

**(b) *Debtors have failed to demonstrate that the funds on the escrow account are property of the estate and that they belong to the Debtors. Moreover, Debtor's request for turnover of funds, if applicable, shall be done thru an Adversary Proceeding***

8. On their Chapter 12 Plan, Debtors alleged that Oriental currently has the amount of approximately $63,000.00 retained in an escrow account, which belongs to the Debtors. Thus, Debtors provided that with the confirmation of the plan, Oriental will turnover the funds. *See, page 3 of the Chapter 12 Plan filed at Docket 15.*

9. Oriental contends that Debtors have not demonstrated that the funds held on the alleged escrow account belong to them, and therefore, are property of the estate so that they have the lawful right to request them.

10. Although Oriental is currently investigating the origin of such funds, Oriental submits that such funds may have been earmarked for payment of Oriental Bank as successor in interest of Eurobank, from Vaquería Tres Monjitas, prior to the filing of the instant bankruptcy case and in accordance with a pre-petition security agreement between the parties. Futhermore, Oriental contends that in the event that the funds belonged to the Debtors, the bank may have the right to setoff such funds under Section 553 of the

Bankruptcy Code. Nevertheless, at this point Debtors have failed to demonstrate that all funds held in the purported escrow account are property of the estate and that they have the right to seek the turnover of funds.

11. On the other hand, Oriental contends that the plan provision concerning the turnover of funds is inconsistent with FRBP 7001(1) which provides that a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under Section 554(b) or 725 of the Code, Rule 2017, or Rule 6002, is an adversary proceeding. Thus, any request for turnover of funds must be brought thru an adversary proceeding.

*(c) The proposed interest rate regarding Ortiental's claim does not provide for a sufficient risk factor.*

12. Section 1225(a)(5)(B)(ii) requires that the value of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim. A leading commentator notes that the present value requirement of § 1225(a)(5)(B)(ii) is identical to the present value requirements of § 1129(a)(9), § 1129(b)(2)(A)(i)(II) and 1325(a)(5)(B)(ii), and therefore case law interpreting those provisions is equally applicable to determining present value under § 1225(a)(5)(B)(ii). 8 COLLIER ON BANKRUPTCY, ¶ 1225.03[4][c] (15th ed. 2005); *see also In re Hungerford,* 19 Mont. B.R. at 113-14 (cases construing cramdown statutes under Chapters 11 and 12 provide valuable interpretation of Chapter 13). *See, In re Tamcke,* 2010 Bankr. Lexis 168.

13. One aspect of determining whether a creditor or creditors are receiving the allowed amount of their claims requires courts to look at a debtor's proposed interest rate. In Chapter 12, courts have determined the cramdown interest rate by using a formula,

starting with a base rate (either the prime rate or the rate on treasury obligations) and adding a "risk factor" based on the risk of default and the nature of the security. *See In re Fowler,* 903 F.2d 694, 697-98 (9th Cir. 1990); *In re Schaak,* 17 Mont. B.R. 349, 355-57 (Bankr. D. Mont. 1999); *In re Janssen Charolais Ranch, Inc.,* 73 B.R. 125, 127-28 (Bankr. D. Mont. 1987); *Hungerford,* 19 Mont. B.R. at 112-13 (quoting *Janssen Charolais Ranch*).

14. In this case, Debtor's Chapter 12 Plan provides for Oriental's claim at an interest rate of 3.25%, plus a risk factor of .25% for the first 5 years, and then of 3.75% for the following five years. As stated by the Debtors, at the time of the filing of the petition the prime rate of interest was at 3.25%. This amount of interest has remained unchanged for a lengthy period of time.

15. It is Oriental's position that a risk factor of .25% during the first five years and of .50% for the following five years is not sufficient. Moreover, when this is not debtors' first bankruptcy and that debtors' prior case was dismissed. Furthermore, courts have held that risk is heightened to an extent based on the unpredictable nature of the agricultural economy. *United States v. Doud,* 869 F.2d 1144, 1145 (8th Cir. 1989).

***(d) The repayment term is excessive.***

16. When considering the duration of the repayment term for secured creditors in Chapter 12 plan, courts have held the same must be in line with customary lending practices or market standards to satisfy Section 1225(a)(5)(B)(ii). *See, In re Koch* 131 B.R. 128 (1991) and In re Fisher 930 F.2d 1361 (1991).

17. Here, the Debtors bear the burden of proof to present evidence on the reasonability, customary lender practices or market standards to justify the proposed repayment term in the Chapter 12 Plan. *In re Richards,* 2004 Bankr. Lexis 388, *In re Torelli,* 338 BR at 397.

18. In this case, Oriental will not accept the repayment terms of 10 years inasmuch that it deems that the same is excessive and unreasonable. Section 1225(a)(5)(B)(ii) requires that the secured creditor receive property having value as of the effective date of the Plan, not less than the allowed amount of the claim. As stated before, the plan provides a repayment term of 10 years. This provision violates the requirement of Section 1225(a)(5)(B)(ii). Moreover, such provision is speculative inasmuch that at this time Oriental cannot ascertain what would be debtors' financial condition and credit worthiness in 10 years.

> ***(e) Debtors' provision to refinance, within 10 years, the outstanding balance of the secured portion of Oriental's claim violates the requirement of Section 1225(a)(5)(B). Thus, the plan fails to provide for the payment in full of Oriental's secured claim.***

19. Section 1225(a)(5)(B)(ii) requires that the secured creditor receive property having value as of the effective date of the Plan, not less than the allowed amount of the claim.

20. In this case, the plan provides that after the 10 years have elapsed Debtors will refinance the remaining balance of Oriental's claim. This provision violates the requirement of Section 1225(a)(5)(B)(ii). Moreover, such provision is speculative inasmuch that at this time Oriental cannot ascertain what would be debtors' financial condition and credit worthiness in 10 years.

*(f) The plan lacks feasibility*

21. Before it can confirm a Chapter 12 plan, the Court must find, among other things, that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1225(a)(6). In other words, the Court must find that the plan is feasible. "The feasibility test requires the court to analyze the debtor's proposed plan payments in light of the debtor's projected income and expenses and to determine that the debtor is likely to be able to make all payments required by the plan." 8 *Collier on Bankruptcy* ¶ 1225.02[5], p. 1225-10 (15th ed. rev.1999). The plan must establish a reasonable probability of success. <u>Lockard, 234 B.R. at 492</u>. "The test is wether the things which are to be done after confirmation can be done as a practical matter under the facts." <u>Clarkson v. Cooke Sales and Service Co. (In re Clarkson), 767 F.2d 417, 420 (8th Cir.1985)</u>.

22. In this case, the plan is not feasible inasmuch that debtors are depending on speculative scenarios to provide for payment of their secured claims. Moreover, since June 30, 2014, Debtors have not provided any financial information nor have reported their income and expenses resulted from their farm operation. Thus, Oriental submits that in order to be in a position to determine if the proposed plan is feasible, Debtors must provide their creditors with all their Monthly Operating Reports. At this point Oriental is unable to ascertain the Debtors' financial wherewithal to repay obligations owed to creditors or the Debtors' prospects for future business.

## **CONCLUSION**

For the foregoing reasons Oriental Bank does not accept the treatment of its secured claims, as required by 11 U.S.C.§1225(a)(5)(A).

## RESERVATION OF FUTURE OBJECTIONS

Oriental Bank reserve its rights to raise any other objection to Debtor's Chapter 12 Plan and/or its Amendments, besides those herein presented, and/or to supplement its objections at the hearing on the same or as otherwise directed by the Honorable Court. Nothing contained herein shall be constructed as a waiver of any additional objections.

**WHEREFORE, Oriental Bank** respectfully requests that this Honorable Court take note of the above stated objections and that it enters Order denying confirmation of Debtor's proposed plan.

## NOTICE

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this motion has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, this motion will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

Puerto Rico Local Bankruptcy Rule 9013-1(h)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a copy of this motion is being sent by first class mail to the Debtor(s): **JUAN JOSE PERAZA MORA and GLORIA ESTHER BATISTA MOLINA,** at the address on record: HC 01 BOX 8076, HATILLO, PUERTO RICO 00659; and to the authorized addresses through/by the Bankruptcy CM/ECF System to: Debtor's counsel, **VICTOR GRATACOS DIAZ;** and to **JOSE RAMON CARRION MORALES,** Chapter 12 Trustee.

In San Juan, Puerto Rico, this 9TH day of September, 2014.

**DELGADO & FERNÁNDEZ, LLP**
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico  00910-1750
☎ (787) 274-1414
🖨 (787) 764-8241

**<u>S/MARISTELLA SÁNCHEZ RODRÍGUEZ</u>**
MARISTELLA SÁNCHEZ RODRÍGUEZ
USDC-PR #224714
msanchez@delgadofernandez.com